JOSEPH J. SIRAGUSA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Siragusa v. Commissioner
Docket No. 3660-78.
United States Tax Court
T.C. Memo 1980-68; 1980 Tax Ct. Memo LEXIS 518; 39 T.C.M. (CCH) 1196; T.C.M. (RIA) 80068; March 10, 1980, Filed Joseph J. Siragusa, pro se. William S. Miller, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies *522 and additions to tax in petitioner's Federal income taxes: Addition to tax [1] Year
Deficiency
Section 6653(a)
1974
$3,197.85
$159.89
1975
2,479.14
123.96
The issues for decision are: (1) Whether petitioner is entitled under section 162 to deduct expenditures for subscriptions to certain publications and memberships in certain organizations. (2) Whether petitioner is entitled under sections 162 and 274 to deduct promotional, gift, entertainment and advertising expenses paid or incurred in 1974 and 1975 in excess of the amounts determined by respondent. (3) Whether petitioner is entitled to deductions under section 162 for automobile mileage in 1974 and 1975 in excess of the amounts determined by respondent. (4) Whether petitioner is entitled to deduct expenses for motels, meals, tips and parking in excess of amounts determined by respondent. (5) Whether petitioner properly computed his capital loss on the dissolution of his investment partnership in 1974. (6) Whether petitioner properly *523 computed his capital gain from the sale of certain real property in 1975. (7) Whether petitioner is entitled to deduct under section 213 the cost of wage continuation insurance in 1974 and 1975. (8) Whether petitioner is entitled to claim his mother as a dependent under section 151(e) in 1974. (9) Whether petitioner may deduct legal fees incurred in connection with a matrimonial action or whether such expenses represent non-deductible personal expenses by reason of section 262. (10) Whether petitioner is entitled to an alimony deduction under sections 71 and 215 based on the fair rental value of lodging provided to his wife by their daughter and son-in-law. (11) Whether petitioner is liable for the additions to tax under section 6653(a). Petitioner claimed deductions for real property taxes arising from property he owner in Phoenix, Arizona, in the amount of $255 in 1974 and $83.40 for 1975. The parties agree that petitioner is entitled to deduct $189.20 for 1974 and $83.40 for 1975. Petitioner has not made any argument that he is entitled to a greater amount. FINDINGS OF FACT Some of the facts have been stipulated. The stipulations of fact and attached exhibits *524 are incorporated herein by this reference. Joseph J. Siragusa (petitioner) resided in Watertown, New York at the time he filed his petition in this case. He filed his Federal income tax returns for 1974 and 1975 with the Internal Revenue North Atlantic Service Center in Andover, Massachusetts. Facts Relating to Issues (1) through (4) and (11)
Petitioner was employed from 1951 to 1975 as a sales representative for Baum's Castorine Co. Inc. of Rome, New York, selling industrial lubricants, soaps, cleaners and other products for commissions. He would call on customers or potential customers at their places of business to sell his product line. His area of sales was northern New York state in and around the city of Watertown. He sold industrial soaps and cleaners to hotels and restaurants up to and including 1973, when he assigned his accounts with these businesses to Mary Freeman, a sales representative for Baum's Castorine Co. Petitioner and Mrs. Freeman resided together in his home during 1974 and 1975. Petitioner's own sales commission records show that he made no commissions on sales to any hotels or restaurants in 1974 and 1975. In 1974 petitioner deducted $120 *525 for dues and subscription expenses as follows: Item
Expense
Coinage Magazine
$ 15
American Defense Preparedness Assn.
23
Hotel and Restaurant Assn.
20
American Express card
15
ItalianAmerican Civic Assn.
15
Other dues and subscription expenses
32
TOTAL
$ 120
Petitioner has been a silver coin collector since 1963. Coinage Magazine publishes current values for various coins. One of the magazines for which he deducted the subscription cost is Outdoor Life. The Italian American Civic Association is non-profit organization for community betterment. The American Defense Preparedness Association is a civilian organization interested in national defense. The Hotel and Restaurant Association is primarily made up of hotel and restaurant owners in Jefferson County, New York. The American Express card was used primarily for personal charges. On his 1974 income tax return petitioner claimed deductions for promotion, entertainment and advertising expenses totalling $9,206. Respondent, in the statutory notice of deficiency, allowed petitioner a deduction of only $777.30 for these 1974 expenses. [2] Respondent has conceded on brief that petitioner is also *526 entitled to deduct $61.20 for tips for those lunches and dinners respondent allowed in his statutory notice of deficiency. [3]
*527 On his 1975 income tax return, petitioner claimed deductions for promotion, entertainment and advertising totalling $5,946. Respondent, in his statutory notice of deficiency, allowed petitioner a deduction of only $449.16 for these 1975 expenses. [4] Respondent has conceded on brief that petitioner is also entitled to deduct $92.25 for tips for those lunches respondent allowed in his statutory notice of deficiency. *528 Petitioner recorded his promotion, entertainment and advertising expenses for 1974 and 1975 in a diary type of yearly calendar. [5] His expenditures for promotion, entertainment and advertising were usually made in cash and seldom by credit card. Petitioner patronized certain Watertown, New York restaurants for many years. A superfluity of petitioner's claimed deductions arise from expenses incurred for retirement parties, golf matches, clam bakes, a stag party, ping-pong games at home, a birthday party and other social gatherings, many of which were for friends and acquaintances. Petitioner deducted costs for food and liquor consumed at his home during various gatherings, many of which were social and had only an attenuated business relationship. He also deducted the costs of fishing trips. Many notations in petitioner's calendars *529 omit the business purpose of the entertainment expenditure, the business relationships of the person or persons entertained, and some omit the location. Petitioner deducted the costs of gifts made in 1974 and 1975 which he had recorded in his calendars. [6]
Petitioner deducted the cost of his membership at the Watertown Golf Club as well as the costs of golf matches, lunches and drinks with other people. He did not keep a record of the business discussions with customers or potential customers entertained at the Watertown Golf Club. He did not know how many times in 1975 he attended Watertown Golf Club, nor did he made a record of the number of times he used the club for personal purposes as opposed to business purposes. As a salesman, petitioner was required to drive to his *530 customer's place of business, although he received no travel reimbursement from his employer. He kept a record of his travel in monthly travel books, which do not indicate actual odometer readings but notations such as "city" or "to Rochester [N.Y.]" with a total of travel miles claimed jotted at the bottom of the page for the day concerned. On his 1974 income tax return, petitioner deducted $3,717 for expenses attributable to automobile business mileage computed in the following manner: 15,000 miles X $.15 per mile
$2,250
14,675 miles X $.10 per mile
1,467
Automobile expenses deducted on
Petitioner's 1974 income tax return
3,717
Respondent, in the statutory notice of deficiency upon which this case is based, disallowed $1.041.90 of the 1974 automobile business expenses and computed petitioner's 1974 automobile expenses in the following manner. 15,000 miles X $.15 per mile
$2,250.00
4,251 miles X $.10 per mile
425.10
1974 automobile expense
deduction allowed
$2,675.10
On his 1975 income tax return, petitioner deducted $4,048 for automobile business expenses computed in the following manner: 15,000 miles X $.15 per mile
$2,250
17,978 miles X $.10 per mile
1,798
1975 automobile expenses deducted
on 1975 income tax return
$4,048
*531 Respondent, in the statutory notice of deficiency upon which this case is based, disallowed $1,543 of the claimed 1975 automobile business expenses and computed petitioner's 1975 automobile expenses as follows: 15,000 miles X $.15 per mile
$2,250
2,550 miles X $.10 per mile
255
1975 deductible business
mileage expense
$2,505
There is a discrepancy between petitioner's monthly travel books and the odometer readings of his cars. Some of which is explained by: (1) petitioner's mileage records include daily commuting mileage from petitioner's residence to his first customer's place of business and from his last appointment back to his residence; (2) petitioner borrowed Mary Freeman's car on many occasions; (3) the odometers in petitioner's cars were broken; and (4) petitioner estimated his business mileage. On his 1974 and 1975 income tax returns, petitioner deducted $989 and $1,759, respectively for motels, meals, tips and parking expenses. Of this, respondent allowed $355.70 for 1974 and $118.63 for 1975. Petitioner recorded his travel, tips and parking expenses in his monthly mileage books. He also made notations regarding his travel in his yearly calendars. *532 On several occasions petitioner deducted the cost of his own meals, as recorded in his mileage books, on trips when he rested in his automobile but was not away from his home overnight. He deducted hotel, meal and mileage costs on various trips including a fishing trip to Black Lake, Golf trips to Lachute, Quebec, and a trip to Orlando, Florida. With the exception of a trip to Arizona in 1975 to inspect his rental property, petitioner's records do not state any business purpose. Facts Relating to Issue (5)
In his 1974 income tax return, petitioner reported a long-term capital loss of $3,926 from the dissolution of Investments Unlimited of Watertown, a partnership. [7] Respondent recomputed petitioner's basis on dissolution as follows: Original Investment
$3,000.00
Additional Investment
500.00
Distributive share of
partnership Loss in 1969
(84.59)
Distributive share of
partnership loss in 1970
(1,227.37)
Distributive share of partnership
gain in 1972
1,055.51
Distributive share of partnership
loss in 1973
(2,825.76)
Basis in Partnership at dissolution
$ 417.79
*533 Petitioner's 1971 income tax return indicates that he had a $39 long-term capital loss and an $98 short-term capital gain in Investments Unlimited. These adjustments were not taken in account in respondent's calculations. On his 1973 income tax return, petitioner reported a $2,980 capital loss which did not include the $2,825.75 distributive share of his 1973 partnership loss in Investments Unlimited. Petitioner properly carried over $1,980 of loss to 1974. Respondent recomputed petitioner's 1974 total capital loss on the dissolution of Investments Unlimited as follows: 1973 partnership loss carried
$2,825.76
forward to 1974
Basis in partnership at dissolution
$417.79
less proceeds received on dissolution
174.00
Loss from dissolution
243.79
Total partnership loss for 1974
$3,069.55
Facts Relating to Issues (6) and (11)
In 1948 petitioner purchased a house at 423 Arsenal Street, Watertown, New York (hereinafter Arsenal Street property), where he and his family resided until September 1962. In 1952 he made improvements and converted the upper portion of this house into an extra apartment which he rented during 1952 and 1953. From 1963 *534 to 1969 petitioner rented or held for rental purposes the entire Arsenal Street property. In 1969 he entered into an agreement with his daughter and her husband whereby petitioner would lease the entire Arsenal Street property to them for seven years, after which they had an option to purchase it. In his 1969 income tax return petitioner listed the adjusted basis before depreciation of the Arsenal Street property as $10,039.07. In his 1970 and 1971 returns he listed the adjusted basis after depreciation as $6,486 and $6,052 respectively. [8] Petitioner's daughter and her husband resided on the property as tenants from 1969 until they were evicted in November 1974 by petitioner for non-payment of rent. In total, petitioner rented or held the Arsenal Street property for rent from 1963 to the end of 1974. On his 1974 income tax return petitioner reported his basis as $18,000 and claimed $450 depreciation. *535 In January 1975, petitioner sold the Arsenal Street property for a contracted consideration payable over a 10 year period. He reported the capital gain from that sale as follows: Sales Price
$18,000
less Basis
-17,927
Long-Term Capital Gain
$ 73
Respondent recomputed petitioner's 1975 long-term capital gain from the sale as follows: Sales Proceeds
$18,000.00
less Attorney's Fees
-142.25
Net Sales Proceeds
$17,857.75
Basis as shown on 1969
return
$10,039.07
less Depreciation
Allowed or Allowable
(not including 1972
and 1973)
-4,437.70
Adjusted Basis
$ 5,601.37
Gain of Sale
12,256.38
less Section 1202 deduction (50%)
-6,128.19
Taxable Gain
$ 6,128.19
less Capital Gain per 1975 return
- 36.00
Adjustment to Capital Gain
$ 6,092.19
Facts Relating to Issue (7)
Petitioner owned a wage continuation insurance policy in 1974 and 1975 which provided that payments would be made to him in lieu of wages if he were hospitalized or too sick to work. He claimed certain medical insurance deductions in 1974 and 1975 which were, in part, attributable to wage continuation insurance. Respondent disallowed that portion of *536 the medical deduction so attributable, calculated as follows: 1974
1975
Insurance Expenses per return
$150.00
$150.00
609.00
528.00
Total Insurance Expenses
$759.00
$678.00
less Insurance Deducted Allowed
per Statutory Notice of Deficiency
-405.75
-423.24
Wage Continuation Insurance
Purchased, deduction of
which was disallowed
$353.25
$254.76
Facts Relating to Issue (8)
Petitioner claimed his mother as a dependent in 1974. She lived in petitioner's home for approximately seven months in 1974 while she was ill. She resided in her own home or in a hospital when she was not living with petitioner. Medicare and Medicaid paid for her medical costs. During 1974 she received $2,316 in social security benefits. Petitioner provided his mother with housing and food for the time she spent with him, but he did not keep any accurate records of his expenses. Facts Relating to Issues (9) and (11)
In 1974 petitioner deducted $525 for legal fees. In support thereof he submitted a billing statement by the Watertown, New York law firm of Willmott, Aylward, Wisner, McAloon & Scanlon. The statement to petitioner was for services rendered *537 in connection with the matrimonial action of Geneva Siragusa v. Joseph J. Siragusa in the New York Supreme Court and Family Court proceedings from August 23, 1973 to April 16, 1975. The statement shows that $500 was paid on account by petitioner on July 30, 1974, and details the work performed by the attorneys for petitioner's matrimonial suit. Geneva Siragusa was married to petitioner during 1974 and 1975, but they were separated during those years. Facts Relating to Issues (10) and (11)
Petitioner deducted $2,784 as alimony payments in 1974. By order of the Family Court for Jefferson County, New York, dated January 13, 1972, petitioner was required to pay $250 support per month to Geneva Siragusa, his wife. He sought to have the sum decreased on the grounds that $110 of the $250 monthly support was to be for the purpose of permitting Geneva Siragusa to pay rent and utilities for an apartment, but Mrs. Siragusa was in fact living rent-free with her daughter and son-in-law in the Arsenal Street property. Petitioner unilaterally decreased his cash monthly alimony payment to $140 to reflect this. The Family Court, by decision dated June 21, 1974, found that the *538 contractual relationship petitioner had with his daughter and son-in-law (seven year lease with option to purchase the Arsenal Street property) was irrelevant to the question of his obligation to support his wife, that his wife contributed on the average $90 a month to her daughter for her room and board and modified the monthly support to $243 per month. Petitioner continued to pay only $140 per month. Respondent concedes that $1,560 of the $2,784 claimed represented alimony paid to Mrs. Siragusa in 1974 and as such is deductible under sections 71 and 215. The balance of the claimed deduction represents the amount petitioner ascribes to the rental value of the apartment Mrs. Siragusa lived in while staying with her daughter and son-in-law, who as petitioner's tenants were in arrears in rent. ULTIMATE FINDINGS OF FACT 1. Petitioner has not established that any of the dues and subscription expenses in 1974 constitute ordinary and necessary business expenses. 2. Certain promotion, entertainment and advertising expenses deducted by petitioner do not constitute ordinary and necessary business expenses. Of those that do constitute section 162 expenditures, certain expenses *539 do not meet the substantiation requirements to section 274 and the remainder do meet the standards of sections 162 and 274. 3. Petitioner has not established that the amount of business use of his vehicle exceeded 19,251 miles in 1974 and 17,550 miles in 1975. 4. Petitioner has not established that his long-term capital loss from the dissolution of investment partnership exceeded the amount determined by respondent as modified by this Court. 5. Petitioner has not established the adjusted basis of the Arsenal Street property upon its sale was in excess of $5,601.37. 6. Petitioner has not established that he is entitled to certain motel, meal and travel expenses. But some travel expenses and parking expenditures are deductible. 7. Petitioiner has no established that he is entitled to medical expense deductions of $353.25 in 1974 and $254.76 in 1975 for the cost of wage continuation insurance. 8. Petitioner has not established that he provided more than one-half of the support of his mother in 1974. 9. Petitioner's legal fees which arose in connection with the matrimonial action are a personal expense. 10. Petitioner has not established that he is entitled *540 to an alimony deduction in 1974 in excess of $1,560.
11. Part of petitioner's underpayment of taxes in 1974 and 1975 was due to negligent or intentional disregard of the income tax rules and regulations. OPINION Issue (1): Dues and Subscriptions
Section 162 allows as a deduction all ordinary and necessary expenses paid or incurred in carrying on a trade or business. Whether an expense is ordinary and necessary and deductible from income is a question of fact. Commissioner v. Heininger,320 U.S. 467 (1943). The burden of proving that an expenditure is an ordinary and necessary business expense is on petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.
Petitioner has not shown that any of the dues or subscription expenses were ordinary and necessary in carrying on his trade or business of selling industrial lubricants, cleaners and other items. The Italian-American Civic Association is an organization for community betterment. The American Defense Preparedness Association is concerned *541 with national defense. Petitioner has not shown how his membership in these organizations are ordinary and necessary expenses in connection with his occupation. There is no documentary evidence that petitioner was required to belong to these organizations by his employer or that by incurring these membership expenses he acquired new customers. While petitioner testified that these memberships enabled him to maintain relations with persons who were his customers or prospective customers, we are not convinced that the dues paid were sufficiently related to the conduct of his business as to have been helpful, useful or ordinary. Boehm v. Commissioner,35 B.T.A. 1106, 1109 (1937). Petitioner's dues in 1974 for the Hotel and Restaurant Association are likewise nondeductible. Although at one time petitioner did make sales to restaurants and hotels, in 1973 he assigned these accounts to his companion and co-worker who thereafter handled them as her customers. Petitioner received no commissions in 1974 from sales to hotels and restaurants. Petitioner also claimed business *542 expense deductions for Coinage Magazine and Outdoor Life magazine. Petitioner has had a hobby of coin collecting for a number of years. Coinage Magazine contains current numismatic listings of various coins and is not related to petitioner's business. Petitioner explained that Outdoor Life magazine enabled him to talk sports with customers, a topic which petitioner says interested them. We find these expenditures were motivated by predominantly personal reasons with only the vaguest business considerations and are not deductible by reason of section 262 which prohibits deductions for personal, living or family expenses. Petitioner introduced no other evidence regarding the costs of any other magazines or organizations for which he claimed deductions. Petitioner claimed a business expense for the cost of maintaining his American Express charge card. He testified that he rarely used his card, that most of his business expenses were in cash, and he submitted no evidence of business expenditures made by use of this credit card. In these circumstances we hold this expense to be personal and nondeductible. Section 262. Issue (2): Promotion and Entertainment Expenses
*543 Petitioner deducted $9,206 in 1974 and $5,946 in 1975 for promotion, entertainment and advertising expenses. [9] Respondent allowed petitioner only $777.30 in 1974 and $449.16 in 1975. [10]
Petitioner has the initial burden of proving that his promotion, entertainment and advertising expenses are ordinary and necessary expenses proximately related to his trade or business. Sanford v. Commissioner,50 T.C. 823, 826 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Assuming petitioner accomplishes this, he must then meet the requirements of section 274 to prevail. Section 274[11] is a disallowance provision; if its own requirements are not met it operates to disallow expenses which have *544 been initially permitted under some other section of the Internal Revenue Code. Alter v. Commissioner,50 T.C. 833, 836 (1968). Ordinarily, petitioner would also have the burden of proving his compliance with section 274. In this case, however, respondent did not assert section 274 in his statutory notice of deficiency nor in his original answer. Respondent orally advised petitioner before trial of his intention to rely on section 274 and filed an amendment to his answer asserting the section 274 requirements. Thus, respondent must bear the burden of proof on this new matter. Rule 142(a), Tax Court Rules of Practice and Procedure.
*545 We hold that, except for the amounts herein allowed, petitioner has not carried his burden of proof that certain promotion, entertainment and advertising expenditures constituted ordinary and necessary business expenses and of those expenses that are deductible section 162 expenses, respondent has carried his burden of proving that petitioner has not met the requirements of section 274. During the years 1974 and 1975 petitioner paid or incurred a considerable number of expenses which he claims were for promotion, entertainment and advertising. [12] Some of the items include retirement parties, golf matches, clam bakes, parties at home (food and liquor), ping-pong games at home, an auto-show, a New Year's Eve party with his companion and co-worker, a luau, a stag party, a birthday party for his sister, furnishing meals to restaurant owners after he assigned his restaurant accounts away, onions, a lunch with the local judge who was hearing petitioner's case to evict his daughter for non-payment or rent, lunches and drinks with various friends and acquaintances, and installing a handrail to his home party room before he had a Christmas party. There is little to distinguish these *546 occasions from the usual social gatherings among friends to enjoy a pleasant evening or festivity. They bear little semblance to the usual gatherings of business people at restaurants or other places of entertainment which serve primarily as congenial meeting places for the discussion or negotiation of business matters. We are not persuaded that much of the entertainment petitioner offered his guests served this purpose or that it was directly related to the operations of his trade or business. Schulz v. Commissioner,16 T.C. 401 (1951).
After a careful review of petitioner's records, however, we think some of his expenditures were prompted by strictly business considerations and should be characterized as ordinary and necessary expenses. Respondent *547 contends and has the burden of proving that, as to these expenditures, petitioner has failed to comply with the requirements of section 274 and the regulations thereunder and for that reason the claimed deductions should not be allowed. Section 274(a)(1)(A) denies deductions for entertainment unless the taxpayer establishes that the item was directly related to, or in the case of an item directly preceding or following a substantial bona fide business discussion that such item was associated with, the active conduct of the taxpayer's trade or business. Section 274(d) denies deductions for any traveling expense, any entertainment or any gift unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of the expense, (B) the time and place of the travel, entertainment, use of an entertainment facility or the date and description of the gift, (C) the business purpose of the expense, and (D) the business relationship to the taxpayer of the persons entertained, using the facility or receiving the gift. Section 274(h) grants to the Secretary of Treasury authority to prescribe such regulations as may be necessary to carry *548 out the purposes of section 274.
Section 274(d) and Section 1.274-5, Income Tax Regs., require taxpayers to substantiate either through adequate records or through their own statements corroborated by other evidence, each and every element (amount, date, place, business purpose, and business relationship) of each and every expenditure in order to claim entertainment and travel expenses allowed under section 162 and section 274. If such substantiation is lacking, the deduction is to be disallowed entirely. Through this statute and the anticipated regulations, Congress did not intend to chill the legitimate and reasonable use of business entertainment and travel, recognizing its function in American business. Its purpose was to eliminate as far as possible abuses of the deduction. Dowell v. United States,522 F.2d 708, 714 (5th Cir. 1975).
Petitioner recorded his meal and beverage expenses for 1974 and 1975 in two diary-type yearly calendars. Meal expenses incurred while in claimed travel status were recorded in his monthly mileage book *549 along with his claimed "tips expense" for both entertainment meals and travel-status meals. Most of petitioner's expenses for meals and beverages totaled less than $25 for which documentary substantiation such as receipts are not required. Section 1.274-5(c)(2)(iii)(b), Income Tax Regs. He would generally note the name of the restaurant, the amount spent for meals (exclusive of tip) and the persons accompanying him under the appropriate dates in his calendars, often omitting the business relationship of the persons entertained or the business purpose, or both. Petitioner appears to contend that the expenses are deductible even though no business was discussed under the "quiet business setting" rule. Section 1.274-2(a) through (e), Income Tax Regs., impose limitations on deductions for entertainment expenses, setting forth general rules, and definitions of entertainment, directly related entertainment, associated entertainment and entertainment facilities. Section 1.274-2(f), Income Tax Regs. *550 , however, provides specific exceptions to the above-mentioned subsections. Section 1.274-2(f)(2)(i), Income Tax Regs., states the quiet business setting rule. Under this exception there is no requirement that business actually be discussed for deductibility of a meal as long as the expense was incurred under circumstances conducive to business discussion. Section 1.274-2(f)(2)(i)(a), Income Tax Regs. This exception indicates that there would be a business purpose if a salesman employed by a manufacturing supply company meets for lunch during a normal business day with a purchasing agent for an manufacturer which is a prospective customer. Section 1.274-2(f)(2)(i)(c), Income Tax Regs. This exception, however, has a prerequisite, that the surroundings in which the food and beverage are furnished provide an atmosphere where there are no substantial distractions to discussions and, if the meals are served in the taxpayer's residence, there must be a clear showing that the expenditure was commercially rather then socially motivated. Section 1.274-2(f)(2)(i)(b), Income Tax Regs. *551 On this prerequisite a number of petitioner's claimed deductions fail. Respondent points out that petitioner's records indicate that the often ate his meals with a group of people, some of whom had no connection with purported customer or prospective customer, other than social. While camaraderie in dining may be enjoyable, it is not necessarily deductible. Moreover, those particular meals which we think have met the quiet business setting exception are still subject to the substantiation requirements of section 274(d). Section 1.274-2(f)(1), Income Tax Regs.
Section 1.274-5, Income Tax Regs., amplifies the substantiation requirements of section 274(d). Petitioner's quiet business meals, other entertainment activities, entertainment facility and gifts are all subject to its requirements. Respondent has meet his burden of proof as to a number of petitioner's claimed quiet business meal and entertainment deductions by showing that petitioner's records omit either the business relationship of the person entertained as required by section 1.274-5(b)(1)(iv), Income Tax Regs., or the business purpose, *552 as required by section 1.274-5(b)(1)(iii). As to some of the claimed quiet business meal and entertainment expenditures, we find petitioner should prevail. Although a written statement of business purpose is generally required, where the business purpose of an expenditure is evident from the surrounding facts and circumstances, a written explanation will not generally be required. Section 1.274-5(c)(2)(ii)(b), Income Tax Regs., clearly provides: [In] the case of a salesman calling on customers on an established sales route, a written explanation of the business purpose of such travel ordinarily will not be required. Similarly, in the case of a business meal described in section 274(e)(i) [quiet business setting], if the business purpose of such meal is evident from the business relationship to the taxpayer of the persons entertained and other surrounding circumstances, a written explanation of such business purpose will not be required. After a careful *553 review of petitioner's records, we find that petitioner may properly deduct under this exception to the written business purpose rule $1,175.60 for entertainment and meals and $146.90 for tips in 1974 and $1,250.94 for entertainment and meals and $128.75 for tips in 1975 in excess of what respondent allowed in his statutory notice of deficiency and conceded on brief. Although we are inclined to disagree with respondent's allowances of certain items, we will not disturb those deductions allowed in the statutory notice of deficiency. Petitioner also deducted his membership cost at Watertown Golf Club in 1975. Section 274(a)(2)(A) treats dues or fees paid to any social, athletic or sporting club as items with respect to facilities. Section 274(a)(1)(B) denies deductibility for any item with respect to facility used in connection with entertainment unless the taxpayer establishes that the facility was used primarily for the furtherance of his trade or business and that the expense was directly related to the active conduct of such trade or business. Again respondent has carried his burden *554 of proof here in the application of the statute and regulations to this claimed deduction. Section 1.274-5(c)(6)(iii), Income Tax Regs., states in order to establish that a facility was used primarily for the furtherance of his trade or business, a taxpayer must maintain records of the use of the facility and such other information as shall tend to establish such primary use. Such records of use shall contain, for each use of the facility claimed to be in furtherance of the taxpayer's trade or business, (A) the amount, (B) the time and place of the use of an entertainment facility, (C) the business purpose, and (D) the business relationship to the taxpayer of each person using the entertainment facility. Moreover, for each use of the facility not in furtherance of the taxpayer's trade or business, the taxpayer must include a notation describing such personal or family use.
Section 1.274-5(c)(6)(iii)(b), Income Tax Regs., provides: If *555 a taxpayer fails to maintain adequate records concerning a facility which is likely to serve the personal purposes of the taxpayer, it shall be presumed that the use of such facility was primarily personal. Petitioner's records do not show the extent to which petitioner used the golf club for business as opposed to personal use. An examination of his calendars indicates he often golfed and entertained with restaurant owners. He assigned all his restaurant and hotel sales accounts to another salesperson in 1973 and received no sales commission from these accounts in 1974 and 1975. His contacts with these restaurant owners were socially rather than commercially motivated. Petitioner has claimed business deductions for gifts in the amounts of $671.60 in 1974 and $120.83 in 1975. Based on the facts and circumstances of this case, we think only $56.50 in 1974 and $32.24 in 1975 meet the requirements of both section 162 and section 274. The remaining expenses were either not directly related to petitioner's business or have not met the substantiation requirements.
Taken as a whole, the evidence in this case indicates that petitioner has indulged in a consistent pattern of abuse *556 in connection with his entertainment, promotion, advertising and gift deductions. We think many of the gift expenses petitioner incurred were not ordinary and necessary expenses paid or incurred in carrying on his trade or business of being a salesman. For example, in 1974 he bought fruitcakes totaling $476.50 to give as gifts. We have allowed only $56.50 because only as to these gifts do his records indicate the cost of the gift, the date, description of the gift, that the donee was a customer or customer representative and the name of the corporation customer. Section 162; Section 1.274-5(b)(5), Income Tax Regs. However, the remaining amount is explained in petitioner's records as merely "Fruitcakes for customers $420.00". Petitioner testified that this represented 120 fruitcakes but he could not recollect any of the beneficiaries of his bounty. We find it peculiar that he was so specific as to a small portion of these gifts and yet so vague as to the greater balance. Petitioner introduced no evidence to correlate, or even approximate, the number of customer *557 representatives with the number of gifts. We are left with the definite impression that petitioner gave these gifts away to his friends and acquaintances out of genial generosity rather than any business motivation. Thus the gifts represent personal expenditures, the deductibility of which is barred by section 262. As to other gift expenses, respondent has shown that the petitioner did not comply with the requirements of section 274. Section 1.274-5(a)(3), Income Tax Regs., provides no deduction shall be allowed for any expenditure with respect to gifts unless the taxpayer substantiates such expenditure as provided in section 1.274-5(c), Income Tax Regs., which specifies the elements of substantiation as: (A) the cost of the gift, (B) the date, (C) a description of the gift, (D) the business reason derived or expected to be derived as a result of the gift and (E) the occupation or other information relating to the recipient of the gift *558 including name, title or other designation, sufficient to establish the business relationship to the taxpayer. Such notations in petitioner's record as "Flowers for Linda $10.70" and "Gave Candles $8.00" do not meet these standards.
Issue (3): Automobile Mileage
Petitioner claimed deductions for expenses attributable to automobile business mileage of $3,717 in 1974 and $4,048 in 1975 based on travel of 29,675 miles and 31,978 miles, respectively. Respondent allowed him a business mileage deduction of $2,675.10 in 1974 and $2,505 in 1975 based on travel of 19,251 miles and 17,550 miles respectively. Petitioner has failed to prove error in respondent's determination. His business mileage computations include the distance traveled from his residence to the place of business of his first customer as well the as the travel mileage from his last customer back to his residence. This mileage is plainly commuting expense and as such it is not deductible. Commissioner v. Flowers,326 U.S. 465, 476 (1946); Green v. Commissioner,59 T.C. 456 (1972). Because *559 petitioner had no established route of travel for visiting his sales accounts and because he kept no records separating his personal mileage from his business mileage, any attempt by him to calculate the correct deductible portion would involve pure speculation. Petitioner calculated his deductions based on the standard mileage formula in Rev. Proc. 74-23, 1974-2 C.B. 476, which permitted a standard mileage rate of 15 cents per mile for the first 15,000 miles each year for business purposes and 10 cents per mile for use for business purposes in excess of 15,000 miles. This rate is based on such items as the cost of gasoline, oil, repairs, licence tags, insurance and depreciation for a passenger automobile owned by the individual taking the deduction. Petitioner included in his computations mileage traveled using his companion's car. He testified he frequently borrowed her car and submitted into evidence a letter from Mrs. Freeman stating that she owned and maintained a car which on many occasions she loaned to him. *560 Petitioner is not entitled to use the standard mileage rate in Rev. Proc. 74-23, supra, for business travel in a borrowed car and to that extent his claims are overstated. Petitioner also testified that the odometers were either broken or malfunctioned on both cars he owned and used in the years at issue. Although he asserts the miles claimed as deductible on his return were within 2 percent of being correct, we are not persuaded that this is so when considered in the light of these facts. Accordingly, we hold that the petitioner has not proved he is entitled to a deduction in excess of that allowed by respondent. Issue (4): Travel Expenses
Petitioner's travel expenses include several one day trips where he drove long distances but did not remain away from his home overnight. On these occasions after resting in his car, he had dinner on the road and deducted the cost of his meals. Section 162(a)(2) permits the deduction of traveling expenses including meals while away from home in the pursuit of a trade or business. For a taxpayer to be considered "away from *561 home" within the meaning of section 162(a)(2) the Supreme Court has held that he must be on a trip requiring sleep or rest. United States v. Correll,389 U.S. 299 (1967). In Barry v. Commissioner,54 T.C. 1210, affd. per curiam, 435 F.2d 1290 (1st Cir. 1970), this Court applied the Correll rule to a case where the taxpayer made one day business trips requiring 16 to 19 hours during which he generally rested once or twice briefly in his automobile but from which he returned home at night. In denying the deduction to the taxpayer there, we held that the rest period required for deductibility was substantial in time generally accompanied by the securing of lodging and did not comprehend a mere pause in the daily work routine. Here the petitioner's claims for these expenses must be denied for the same reason. Petitioner's travel expenses also include several overnight trips. Section 1.162-2(a), Income Tax Regs. *562 , states Only such traveling expenses as are reasonable and necessary in the conduct of the taxpayer's business and directly attributable to it may be deducted. * * * Section 1.162-2(b)(1), Income Tax Regs., states: If a taxpayer travels to a destination and while at such destination engages in both business and personal activities, traveling expenses to and from such destination are deductible only if the trip is related primarily to the taxpayer's trade or business. * * * Section 1.162-2(b)(2), Income Tax Regs., states: Whether a trip is related primarily to the taxpayer's trade or business or is primarily personal in nature depends on the facts and circumstances in each case. * * * With the exception of a trip to Arizona to establish the rental price of a house he owned, petitioner has failed to prove that these trips were related primarily to his trade or business of selling industrial lubricants, cleaners and other items. *563 His peregrinations include a fishing trip to Black Lake, golf trips to the Lachute Country Club in Quebec, Canada, and a trip to Orlando, Florida and Disney World. On these trips he was often accompanied by friends or he visited friends. If there was any business discussed or transacted, it was insubstantial. Moreover, petitioner's records do not indicate the business purpose of the trips as required by section 1.274-5(b)(2)(iv), Income Tax Regs.Petitioner did not submit any credible evidence to persuade us that these trips were commercially rather than socially motivated. Accordingly, except for the expenses associated with the Arizona trip, all other travel expenses are not deductible. Petitioner included in his "travel expenses" his out-of-pocket costs for parking incurred while on his day-to-day sales route. Such expenses averaged 20 to 40 cents per day and were recorded in his monthly mileage books. These expenses are deductible. Section 162. Issue *564 (5): Capital Loss on Partnership Dissolution
Petitioner disputes respondent's determination on the amount of long-term capital loss he realized upon the dissolution of Investments Unlimited, of Watertown, New York, a partnership. Petitioner asserts his long-term capital loss upon liquidation in 1974 was $3,926; respondent, however, calculated the loss to be $3,069. Respondent computed the capital loss based on copies of the partnership return petitioner submitted during audit. Respondent's calculations reflect petitioner's original investment, additional investment and his distributive share of partnership gains and losses for the years 1969, 1970, 1972 and 1973, but not 1971. Petitioner's Federal income tax return for 1971 indicates that he had a $39 long-term capital loss and a $98 short-term capital gain arising from Investments Unlimited. Except for his 1971 Federal income tax return, petitioner introduced no credible evidence to rebut respondent's determination. Because petitioner has failed to establish a proper basis for computing losses realized on the dissolution of *565 the partnership, the respondent's determination, adjusted to reflect the 1971 distributive share of gains and losses, will be sustained. Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.
Issue (6): Capital Gain on Sale of House
In 1948 petitioner purchased the Arsenal Street property where he and his family resided until September 1962. In 1952 he made improvements and converted the upper portion of the house into an extra apartment which he rented during 1952 and 1953. From 1963 to 1975 he rented or held for rental purposes the entire Arsenal street property. In January 1975, he sold the house for a contracted sum, reporting his capital gain from the sale as: Sales Price
$18,000
Less Basis
-17,927
Long-term
Capital Gain
$73
Although petitioner reported his basis in the property at the time of sale as $17,927, respondent determined his basis to be only $5,601.37 at the time of sale. In his 1969 Federal income tax return, petitioner listed his cost basis plus capital expenditures before any depreciation as $10,039.07. In 1970 and 1971 he listed his adjusted basis after depreciation allowed *566 or allowable as $6,484 and $6,052, respectively. During these years the petitioner was depreciating the $9,500 cost basis of the frame house on a straight line method at the rate of 4 percent a year and $540 of 1962-1963 capital improvements on a straight line method at the rate of 10 percent a year. On his 1974 Federal income tax return, which was signed and dated by petitioner on or about March 26, 1975, he reported a "cost or other basis" of $18,000, no accumulated prior depreciation, and a depreciation expense item for 1974 in the amount of $450. In Janury 1975, he sold the Arsenal Street property, showing on his 1975 Federal income tax return a sales price of $18,000 and a "cost or other basis" of $17,927, leaving him with a gain of only $73. Petitioner introduced no credible evidence to explain the dramatic increase in his adjusted basis which occurred so suddenly before the sale of the Arsenal Street property. In his statutory notice respondent calculated petitioner's adjusted basis as of December 31, 1974 to be $5,601.37 by starting with the cost plus capital improvements basis of $10,039.07 as shown on petitioner's 1969 Federal income tax return and subtracting from *567 that the total of prior years' depreciation as shown on petitioner's 1970 return, and his 1970, 1971 and 1974 depreciation expense items as shown on his returns for those respective years. Respondent did not adjust the basis for depreciation allowed or allowable in 1972 and 1973 although petitioner was holding the property for rent during those periods, and the basis should have been reduced under section 167. Petitioner seeks to eliminate virtually all of his gain by testifying that he made some $9,500 of improvements to the property between 1948 and 1952, implying that he discovered this addition to adjusted basis only just before the sale. He offered no independent proof of these improvements to corroborate his testimony. He was careful to adjust his basis positively for $540 of capital improvements done in 1962 and 1963. Thus, we find his omission of the earlier improvements dubious. Respondent computed petitioner's adjusted basis in the Arsenal Street property using petitioner's own Federal income tax returns. Petitioner has not met his burden of proving error in respondent's calculation that the adjusted basis of the property before the sale was $5,601.37. Therefore, *568 we sustain respondent's determination on this issue. Welch v. Helvering,supra; Rule 142, supra. Issue (7): Wage Continuation Payments
Section 213(a) allows a deduction for amounts paid for insurance which constitutes medical care to the taxpayer. Section 213(e) defines medical care for insurance purposes as being for the diagnosis, cure, mitigation, treatment or prevention of disease, or for the purpose of affecting any structure or function of the body or for transportation primarily for and essential to the above. The report of the House Committee on Ways and Means explaining this statutory language stated in H. Rept. No. 213, 89th Cong., 1st Sess. 178 (1965), 1965-2 C.B. 733, 745 that: If amounts are payable under an insurance contract for other than medical care (such as an indemnity for loss of income or for loss of life, limb or sight) then * * * no amount paid for such contract is to be treated as medical care unless (1) the contract specifies what part of the premium is attributable to insurance for medical care, and (2) *569 the part of the premium specified in the contract as being so attributable is a reasonable amount in relation to the total premium under the contract. * * * See also Rev. Rul. 68-451, 1968-2 C.B. 111.
Petitioner deducted wage continuation insurance payments of $353.35 in 1974 and $254.76 in 1975. These insurance payments were attributable to an insurance contract indemnifying for loss of income and as such are not deductible under section 213. Issue (8): Dependency Exemption
Next we must decide whether petitioner is entitled to a dependency deduction for his mother for 1974. Section 151(e) allowed in 1974 a exemption of $750 for a dependent, as defined in section 152, whose gross income for the year was less than $750. Section 152 includes in the definition of dependent a mother of a taxpayer over half of whose support for the year was received from the taxpayer. *570 "Gross income" in section 151(e) refers to statutory gross income. Income which is excludable from statutory gross income, such as social security benefits, is not counted in calculating the "gross income" test. Excludable income, however, is counted in determining whether a taxpayer has provided over half of the dependent's support. Petitioner's mother received $2,316 in social security benefits in 1974. Petitioner asserts that he furnished his mother with $2,400 in support, thus entitling him to a dependency exemption for her. She resided in petitioner's home for approximately seven months in 1974 while she was ill. The remainder of the year she lived in her own home or in a hospital. Petitioner provided his mother with food and housing for the time she spent with him, but he did not keep any accurate record of his expenses. In order to show he provided more than one-half of the purported dependent's support, a taxpayer must first demonstrate by competent evidence the total amount of support furnished by all sources for that *571 year. If the amount of total support is not shown, or cannot reasonably be inferred from the competent evidence, then it is not possible to conclude that the taxpayer furnished more than one-half. Blanco v. Commissioner,56 T.C. 512, 514-15 (1971). Petitioner has presented no evidence other than his bare unsubstantiated assertion that he provided $2,400 of support for his mother. Consequently, he has failed to carry his burden of proof. Respondent's determination is sustained. Welch v. Helvering,supra; Rule 142, supra. Issue (9): Legal Fees
In 1974 petitioner deducted $525 for legal fees for services rendered in connection with a matrimonial action of Geneva Siragusa v. Joseph J. Siragusa in the New York Supreme Court and Family Court. Geneva Siragusa was married to petitioner during 1974 and 1975, but they were separated during those years. Petitioner contends that these legal costs were incurred to protect his financial interest in assets he had accumulated. In United States v. Gilmore,372 U.S. 39, 49 (1963), *572 the Supreme Court stated that the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling test of whether the expense was "business" or "personal", and hence whether it is deductible or not. In denying the deductibility of expenses incurred in divorce litigation, the Supreme Court held that the origin of the claim stemmed from the marital relationship and did not arise from the husband's profit-seeking activities and, therefore, none of his expenditures in resisting those claims could be deemed "business" expenses. Here all of petitioner's legal fees arose in connection with a matrimonial action, and are therefore not deductible. See also section 1.262-1(b)(7), Income Tax Regs.
Issue (10): Alimony Payments
Petitioner paid Geneva Siragusa, his wife, $1,560 of alimony pursuant to section 71(a)(3) and to this extent respondent has conceded that petitioner qualifies for a deduction under section 215. In 1974 Mrs. Siragusa moved into the Arsenal *573 Street property which was occupied by her daughter and son-in-law under a lease-purchase agreement with petitioner. Petitioner unilaterally reduced his support payments to Mrs. Siragusa in 1974 contending that since he owned the house leased to his daughter and son-in-law he was furnishing Mrs. Siragusa with an apartment, the fair rental value of which equaled $110 per month. He attempted to modify the support order on this ground and was substantially unsuccessful. He deducted a total of $2,784 as alimony payments in 1974 of which $1,560 respondent concedes is properly deductible. The balance of the claimed deduction represents the amount petitioner ascribes to the rental value of the apartment Mrs. Siragusa occupied while staying with her daughter and son-in-law. Petitioner leased the Arsenal Street property to his daughter and son-in-law in 1969 and they were contractually liable to make lease payments to him during the term of the lease. In 1974 they allowed Mrs. Siragusa to stay with them, and thus provided her housing even though they were in arrears in rental payments in that year. She contributed services and money to them to help the household. Petitioner did not furnish *574 his wife with a residence. The New York Court ordered him to pay a specific dollar sum to his wife, and ruled that the lease-purchase agreement petitioner had with his daughter and son-in-law was irrelevant to the question of his obligation to support his wife. Petitioner paid only $1,560 in support to Mrs. Siragusa in 1974. He is not entitled to deductions in excess of that amount. Imputed fair rental value is not deductible. Bradley v. Commissioner,30 T.C. 701 (1958), appeal dismissed, (9th Cir. March 3, 1959); Pappenheimer v. Allen,164 F.2d 428 (5th Cir. 1947). It is certainly not deductible when someone else independently provides the housing. This situation is distinguishable from that in Marinello v. Commissioner,54 T.C. 577 (1970). In that case the divorce decree provided that the husband should furnish his former wife with a specific residence without charge. The residence she occupied was owned by a corporation, which, in turn, was owned by the husband. He made rental payments to the corporation for her. By contrast, *575 Mrs. Siragusa was not given the right to occupy a specific residence and the petitioner made no payments, above the conceded $1,560, which enabled her to occupy the premises. Mrs. Siragusa occupied the Arsenal Street property as the guest or sub-tenant of her daughter and son-in-law. Petitioner discharged no legal obligation imposed by the support decree by virtue of the fact that his wife resided in the Arsenal Street house. Issue (11): Additions to Tax under Section 6653(a)
Respondent has imposed for both years in issue the addition to tax under section 6653(a) for negligent or intentional disregard of the rules and regulations relating to income taxes. The burden of proof is upon the petitioner to show that respondent erred in his determination. Farwell v. Commissioner,35 T.C. 454, 473 (1960); Bunnel v. Commissioner,50 T.C. 837 (1968). The addition to tax under section 6653(a) has been upheld where personal expenditures were disguised as business expenses and capital items were understated. American Rolbal Corp. v. Commissioner,220 F.2d 749 (2d Cir. 1955), *576 affg. a Memorandum Opinion of this Court; American Packing Co. Inc. v. Commissioner,3 B.T.A. 195 (1925). The evidence here shows that the petitioner deducted many personal expenses on his 1974 and 1975 Federal income tax returns. Dues and subscription deduction were for items entirely personal in nature. Entertainment deductions frequently included dining and partying with friends on social occasions. The petitioner's approach to promotion, advertising, entertainment and gift deductions was predicated upon definitions of business associates and contacts which were so expansive that they could only be characterized as unreasonable. This approach is also reflected in his attempt to deduct his golf, fishing and vacation trips. In addition, he did not satisfactorily explain the sudden increase in the adjusted basis he used to compute the reportable capital gain on the sale of his house. Petitioner contends on brief that for the years 1974 and 1975 he presented all his income and expenditure information to his tax accountants for their expert opinion as to what was properly includable and what was properly deductible. For this reason petitioner argues he is not *577 liable for any negligent or intentional disregard of the rules and regulations regarding income taxes. We disagree. A taxpayer cannot avoid the duty to file accurate returns by shifting the responsibility to his accountant. Bailey v. Commissioner,21 T.C. 678, 687 (1954). Even when a taxpayer's books are kept and his tax returns are prepared by a certified public accountant, he cannot escape responsibility for filing correct returns since the books are kept and the returns are prepared on the basis of information supplied by the taxpayer. SoRelle v. Commissioner,22 T.C. 459, 489 (1954). In this case petitioner did not call his accountants to testify regarding their expert opinion or the information they had on hand when they prepared his return. On this record we conclude that petitioner has failed to prove that respondent erred in determining that part of the underpayment of tax for the years 1974 and 1975 was due to negligent or intentional disregard of rules and regulations within the meaning of section 6653(a). Accordingly, the petitioner *578 is liable for the additions to tax. A final matter that should be addressed is petitioner's position on brief that he would accept the pretrial offer of settlement made by the Appeals Division of the Internal Revenue Service and pay the tax calculated on that offer. Although the petitioner received what we think was a generous pretrial settlement offer, he chose to litigate the issues and to attempt to persuade this Court by his records, testimony and legal arguments that the respondent's determination was erroneous. After a careful review of the evidence, we found his records inadequate, his testimony unconvincing and his legal arguments generally without merit. Litigation is not something lightly begun nor without its hazards. Courts must base their decisions upon independent evaluation of the evidence offered at trial and the applicable legal principles. Pretrial offers of compromise are not considered. A litigating party cannot have the best of both worlds: he cannot argue at trial and on brief that the Court should hold for him on the facts and law and at the same time request that he should be allowed at least as much as his best pretrial settlement offer. What a *579 party must always bear in mind is that mutual accommodation and agreement can often achieve a more favorable result than litigation. This petitioner chose to go to trial and he is stuck with the consequences. To reflect the concessions of the parties and our conclusions with respect to the disputed issues, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue, unless otherwise indicated.↩
2. Respondent computed the deductions allowable for 1974 promotion, entertainment and advertising expenses as follows: ↩
Nature of Date
Entertainment
Location
Amount
1-23
Lunch
Syracuse
$ 7.80
21.50
2-7
Lunch
Buffalo
42.10
9.00
2-13
Lunch
Schenectady
23.80
21.50
3-6
Lunch
13.80 3-12
Lunch
Syracuse
8.90
3-20
Lunch
Syracuse
15.80
3-25
Lunch
Syracuse
11.60
4-8
Lunch
Syracuse
12.00
4-24 Lunch
Syracuse
13.00
5-7
Lunch
Syracuse
13.20
5-23
Lunch
Syracuse
13.00
5-28
Lunch
Schenectady
21.50
6-13
Lu nch
Syracuse
17.70
6-20
Lunch
Syracuse
22.80
Clambake
23.00
Clambake
39.00
6-25
Lunch
Syracuse
12.20
7 -9
Lunch
Syracuse
11.60
7-25
Lunch
Syracuse
16.00
Clambake
13.00
Bar
27.50
8-2
Lunch
Buffalo
31.50 Tip
4.50
Parking
1.00
8-22
Lunch
Syracuse
14.80
Party
20.66
Party
16.00
Liquor
23.50
9-18
Lun ch
Syracuse
13.85
9-26
Lunch
Syracuse
11.90
10-16
Lunch
Syracuse
11.80
10-24
Lunch
Syracuse
15.50
11-18
Lunc h
Watertown
9.80
6.00
12-13
Dinner
Watertown
23.00
12-18
Bar
4.50
Lunch
30.25
Gifts
24.00
Gifts
15.00
Gifts
15.00
Miscellaneous Expenses
53.44
Total
$777.30
3. Although petitioner recorded the cost of meals in his diary yearly calendars, he recorded the tips in connection with each meal in separate monthly travel books.↩
4. Respondent computed the deductions allowable for 1975 promotion, entertainment and advertising expenses as follows: ↩
Nature of Date
Entertainment
Location
Amount
1-23
Lunch
Syracuse
$23.00
2-12
Lunch
Syracuse
13.00
3-4
Lunch
Schenectady
24.00
3-23
Lunch
Toronto, Ont.
29.60
3-27
Lunch
Syracuse
23.50
4-1
Lunch
Schenectady
24.80
4-10
Lunch
Buffalo
46.80
5-14
Lunch Schenectady
24.00
5-22
Lunch
Buffalo
47.85
6-10
Lunch
Schenectady
23.50
9.00
7-7
Lunch
Buffalo
30.00
3.06
9.00
8-13
Lunch
Syracuse
16.75
8-20
Lunch
Syracuse
13.50
9-18
Lunch
Syracuse
35.00
9-25
Lunch
Syracuse
15.80
11-12
Lunch
Syracuse
15.80
11-18
Lunch
Syracuse
21.20
Total
$449.16
5. Petitioner's calendars are rife with the notations such as "P & R at Benny's Steak House", "P & R at Morgia's", "P & R at Watertown golf Club". These notations do not indicate whether petitioner incurred entertainment expenses with customers or friends. Petitioner explained at trial that "P & R" meant "public relations or promotional work".↩
6. Some of the entries were recorded as follows, e.g.: [December 12, 1974] "Fruitcakes for customers $420.00"; [June 30, 1975] "Present for Marcino wedding $24.00"; [December 3, 1975] "Flowers for Linda $10.70". Other entries were more specific [December 16, 1974] "Gave Fruitcakes to Kilian Mfg. & G.E. $20.00; [December 19, 1974] "Candy & Fruitcake to N.Y. Air Brake & St. Regis $12.50".↩
7. The parties agree that petitioner derived a $7,529 long-term capital gain from an unrelated sale of certain stock in Cheesbrough Ponds Inc.↩
8. Petitioner calculated his 1970 basis as follows: Cost
$9,500
1962 Improvements
191
1963 Improvements
349
Sub-Total
$10,040
Depreciation allowed in prior
years to cost basis
(2,755)
Depreciation allowed in prior
years to 1962 improvements
(138)
Depreciation allowed in prior
years to 1963 improvements
(227)
Depreciation claimed in 1970
(434)
Adjusted Basis 1970
$6,486
Petitioner calculated his 1971 basis as follows: ↩
Cost
$9,500
1962-1963 Improvements
540
Sub-Total
$10,040
Depreciation allowed in prior
years to cost
(3,135)
Depreciation allowed in prior
years to improvements
(419)
Depreciation claimed in 1971
(434)
Adjusted Basis 1971
$6,052
9. Petitioner did not include tips in these deductions, rather he included them in a category he denominated as "travel, tips and parking." ↩
10. Respondent agrees that petitioner is entitled to deductions for tips of $61.20 in 1974 and $92.25 in 1975 for the corresponding lunches and dinners respondent has allowed.↩
11. Sec. 274. (a) ENTERTAINMENT, AMUSEMENT, OR RECREATION.-- (1) IN GENERAL.--No deduction otherwise allowable under this chapter shall be allowed for any item-- (A) ACTIVITY.--With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or (B) FACILITY.--With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business, and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business. (2) APECIAL RULES.--For purposes of applying paragraph (1)-- (A) dues or fees to any social, athletic, or sporting club or organization shall be treated as items with respect to facilities. (B) an activity described in section 212 shall be treated as a trade or business. (b) GIFTS.-- (1) LIMITATION.--No deduction shall be allowed under section 162 or section 212 for any expense for gifts made directly or indirectly to any individual to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the same taxable year, exceeds $25. * * *
(d) SUBSTANTIATION REQUIRED.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may be regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. (e) SPECIFIC EXCEPTIONS TO APPLICATION OF SUBSECTION (a).--Subsection (a) shall not apply to-- (1) BUSIESS MEALS.--Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conductive to a business discussion. * * *
(h) REGULATORY AUTHORITY.--The Secretary or his delegate shall prescribe such regulations as he may deem necessary to carry out the purposes of this section, including regulations prescribing whether subsection (a) or subsection (b) applies in cases where both such subsections would otherwise apply.↩
12. On his income tax returns petitioner's claimed adjustments to income and itemized deductions reduced his reported gross income of $23,942 in 1974 and $16,405 in 1975 to taxable income of "$-663" and "$-4,179" respectively.↩